IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL DUBOV,

    Petitioner,                   No. 2:10-cv-3288 GEB KJN P

    vs.

GARY SWARTHOUT, Warden,

    Respondent.               FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

        Petitioner is a state prisoner proceeding with counsel, with an amended petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.[1] Petitioner claims that his federal constitutional right to due process was violated by a 2009 decision of the California Board of Parole Hearings (hereafter "the Board") denying petitioner parole, and that the Board's application of California's "Proposition 9," to delay for seven years his next parole hearing, violates the federal Ex Post Facto Clause. Respondent has filed a motion to dismiss the amended petition, pursuant to Rule 4, Rules Governing § 2254 Cases in the United States District Courts. Petitioner has filed an opposition. For the reasons that follow, this court recommends that the

---

[1] This matter is before the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B), Local General Order No. 262, and Local Rule 302(c).

amended petition be dismissed.

II. Background

        Petitioner is incarcerated at California State Prison-Solano, in Vacaville, California, pursuant to the authority of the California Department of Corrections and Rehabilitation. Petitioner is serving a sentence of twenty-five-years-to-life, based on a 1996 murder conviction. Petitioner contends that the Board's July 8, 2009 decision violated his Fourteenth Amendment right to substantive due process, and that the seven-year deferral of a subsequent parole hearing creates a substantial risk of increased punishment in violation of state and federal ex post facto laws.

III. Discussion

        A. Due Process

        The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A litigant alleging a due process violation must first demonstrate that he was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 459-60 (1989).

        A protected liberty interest may arise from the Due Process Clause of the United States Constitution either "by reason of guarantees implicit in the word 'liberty,'" or from "an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citations omitted). The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981); Greenholtz v. Inmates of Neb. Penal and Correctional Complex, 442 U.S. 1, 7 (1979) (There is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."). However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or

unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest." Greenholtz, 442 U.S. at 12; see also Board of Pardons v. Allen, 482 U.S. 369, 376-78 (1987) (a state's use of mandatory language ("shall") creates a presumption that parole release will be granted when the designated findings are made).

The Supreme Court recently affirmed that California's parole statutes give rise to a liberty interest in parole protected by the federal Due Process Clause. Swarthout v. Cooke, 131 S. Ct. 859, 861-62 (Jan. 24, 2011). In California, a prisoner is entitled to release on parole unless there is "some evidence" of his or her current dangerousness. In re Lawrence (2008) 44 Cal. 4th 1181, 1205-06, 1210; In re Rosenkrantz (2009) 29 Cal. 4th 616, 651-53. However, in Swarthout, the Supreme Court held that "[n]o opinion of [theirs] supports converting California's 'some evidence' rule into a substantive federal requirement." Swarthout, 131 S. Ct. at 862. In other words, the Court specifically rejected the notion that there can be a valid claim under the Fourteenth Amendment for insufficiency of evidence presented, or relied upon, at a parole proceeding. Id. at 862-63. Rather, the protection afforded by the federal Due Process Clause to California parole decisions consists solely of the "minimum" procedural requirements set forth in Greenholtz, specifically "an opportunity to be heard and . . . a statement of the reasons why parole was denied." Id. at 862.

The Supreme Court has stated that "the beginning and the end of the federal habeas courts' inquiry" is whether petitioner received "the minimum procedures adequate for due-process protection." Swarthout, 131 S. Ct. at 862. Petitioner's reliance on the Court's decisions prior to Swarthout is inapposite.

Both petitioner and respondent have submitted copies of the transcript of the subject parole hearing. (Dkt. No. 14, Exh. B; Dkt. No. 11, Exh. 2 ("Hearing Decision").) The record reflects that petitioner was present, with counsel, at the July 8, 2009 parole hearing, that petitioner was afforded access to his record in advance, that petitioner participated in the hearing, and that he was provided with the reasons for the Board's decision to deny parole. According to

the most recent pronouncement of the United States Supreme Court, the federal Due Process Clause requires no more. Petitioner's several contentions premised on the substance of the Board's parole decision, challenging the factors and sufficiency of the evidence underlying that decision, are therefore without merit.

### B. Ex Post Facto Clause

Petitioner also contends that the Board's application of the recently enacted "Marsy's Law" (adopted by the voters pursuant to Proposition 9, the "Victims' Bill of Rights Act of 2008: Marsy's Law"), to delay for seven years his next parole hearing (Hearing Decision, at 98), violated the Ex Post Facto Clause of the United States Constitution.[2] Under the statute as it existed prior to the enactment of "Marsy's Law," indeterminately-sentenced inmates, like petitioner, were denied parole for one year unless the Board found, with stated reasons, that it was unreasonable to expect that parole could be granted the following year, in which case the subsequent hearing could be extended up to five years. Cal. Penal Code § 3041.5(b)(2) (2008). At the July 2009 parole hearing, petitioner was subject to the terms of the amended statute, which authorizes denial of a subsequent parole hearing for a period up to fifteen years. Cal. Penal Code § 3041.5(b)(3) (2010). The shortest interval that the Board may set is three years, based on a finding that the prisoner "does not require a more lengthy period of incarceration . . . than seven additional years." Id.,§ 3041.5(b)(3)(C).

The Constitution provides that "No State shall . . . pass any . . . ex post facto Law." U.S. Const. art. I, § 10. A law violates the Ex Post Facto Clause if it: (1) punishes as criminal an act that was not criminal when it was committed; (2) makes a crime's punishment

---

[2] Although petitioner challenges the deferral period based on both state and federal law, the court addresses only petitioner's federal challenge. A writ of habeas corpus is available under 28 U.S.C. § 2254(a), only on the basis of some transgression of federal law binding on the state courts. Middleton v. Cupp, 768 F. 2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). It is unavailable for alleged error in the interpretation or application of state law. Middleton, 768 F. 2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F. 2d 1378, 1381 (9th Cir. 1986).

greater than when the crime was committed; or (3) deprives a person of a defense available at the time the crime was committed. Collins v. Youngblood, 497 U.S. 37, 52 (1990). The Ex Post Facto Clause is also violated if: (1) state regulations have been applied retroactively to a defendant; and (2) the new regulations have created a "sufficient risk" of increasing the punishment attached to the defendant's crimes. Himes v. Thompson, 336 F. 3d 848, 854 (9th Cir. 2003). Not every law that disadvantages a defendant is a prohibited ex post facto law. In order to violate the Clause, the law must essentially alter "the definition of criminal conduct" or increase the "punishment for the crime." Lynce v. Mathis, 519 U.S. 433, 441-42 (1997); Souch v. Schaivo, 289 F. 3d 616, 620 (9th Cir. 2002).

California Penal Code section 3041.5 has been amended several times since the date of petitioner's conviction to allow for longer periods of time between parole suitability hearings. Ex post facto challenges to those amendments have all been rejected. See e.g. California Department of Corrections v. Morales, 514 U.S. 499, 509 (1995) (1981 amendment to Section 3041.5, which increased maximum deferral period of parole suitability hearings to five years did not violate the Ex Post Facto Clause because it simply altered the method of setting a parole release date and did not create a meaningful "risk of increasing the measure of punishment attached to the covered crimes"); Watson v. Estelle, 886 F. 2d 1093, 1097-98 (9th Cir. 1989) (not a violation of the Ex Post Facto Clause to apply Section 3041.5(b)(2)(A) to prisoners sentenced to life imprisonment prior to the 1977 implementation of California's Determinate Sentence Law); Clifton v. Attorney General Of the State of California, 997 F. 2d 660, 662 n.1 (9th Cir. 1993) (same); see also Garner v. Jones, 529 U.S. 244, 249 (2000) (upholding Georgia's change in the frequency of parole hearings for prisoners serving life sentences, from three to eight years).

Recently the Ninth Circuit overturned a district court decision granting preliminary injunctive relief to plaintiffs in a class action seeking to prevent the Board from enforcing the amended deferral periods established by Marsy's Law. Gilman v. Schwarzenegger, ___F.3d___, 2011 WL 198435 (9th Cir., Jan. 24, 2011). The court found it

1   unlikely that plaintiffs would succeed on the merits of their underlying challenge premised on the

2   Ex Post Facto Clause.  The court initially compared and contrasted Marsy's Law with existing

3   Supreme Court precedent:

> Here, as in <u>Morales</u> and <u>Garner</u>, Proposition 9 did not increase the statutory punishment for any particular offense, did not change the date of inmates' initial parole hearings, and did not change the standard by which the Board determined whether inmates were suitable for parole.  However, the changes to the frequency of parole hearings here are more extensive than the change in either <u>Morales</u> or <u>Garner</u>.  First, Proposition 9 increased the maximum deferral period from five years to fifteen years.  This change is similar to the change in <u>Morales</u> (i.e., tripled from one year to three years) and the change in <u>Garner</u> (i.e., from three years to eight years).  Second, Proposition 9 increased the minimum deferral period from one year to three years.  Third, Proposition 9 changed the default deferral period from one year to fifteen years.  Fourth, Proposition 9 altered the burden to impose a deferral period other than the default period. . . . Neither <u>Morales</u> nor <u>Garner</u> involved a change to the minimum deferral period, the default deferral period, or the burden to impose a deferral period other than the default period.

14  <u>Gilman</u>, 2011 WL 198435, at * 5.  The Ninth Circuit found these distinctions insignificant due to

15  the availability of advance parole hearings at the Board's discretion (sua sponte or upon the

16  request of a prisoner, the denial of which is subject to judicial review), reasoning that, "as in

17  <u>Morales</u> , an advance hearing by the Board 'would remove any possibility of harm' to prisoners

18  because they would not be required to wait a minimum of three years for a hearing." <u>Id.</u> at *6,

19  quoting <u>Morales</u>, 514 U.S. at 513.  The court concluded that plaintiffs had failed to demonstrate a

20  significant risk that their incarceration would be prolonged by application of Marsy's Law, and

21  thus found that plaintiffs had not established a likelihood of success on the merits of their ex post

22  facto claim.

23          In addition to these preliminary conclusions by the Ninth Circuit that Marsy's

24  Law does not appear to violate the Ex Post Facto Clause, at least one district court has dismissed

25  a petitioner's challenge to the law on the ground that it improperly duplicates the class action

26  claim still pending on the merits in <u>Gilman</u>.  See e.g. <u>Bryant v. Haviland</u>, 2011 WL 23064,

*2-5,15 (E.D. Cal., Jan. 4, 2011).  That court noted that petitioner therein, as here, appears to be a member of the Gilman class "of prisoners convicted of murder and serving a sentence of life with the possibility of parole with at least one parole denial . . . challeng[ing] the state procedures denying class members parole as well as their deferred parole suitability hearings following a finding of parole unsuitability."  Id. at *5.  Relying on established precedent precluding a member of a class action from seeking, in an individual action, equitable relief that is also sought by the class, see e.g. Crawford v. Bell, 599 F. 2d 8990, 892-93 (9th Cir. 1979), the court dismissed petitioner's claim.

IV.  Conclusion

Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1.  Respondent's motion to dismiss (Dkt. No. 15) be granted; and

2.  Petitioner's amended application for a writ of habeas corpus (Dkt. No. 14) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the

////

specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  May 4, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

dubo3288.157